12.684 Alice Sussman v. Keith Dalton, Jr., 23 11.684 Alice Sussman v. Keith Dalton, Jr., 23 Good morning. Cindy Rech appearing on behalf of the appellant, Washtenaw County Deputy Keith Dalton. I have brought the DVD, if anybody would like me to queue that up. It takes a couple minutes. I'm not sure it's necessary in this case. I'm going by application of the standard, and I don't think in this case that doing the DVD is necessary. This is a 1983 case out of the Eastern District of Michigan. The plaintiff, Alice Sussman... I've seen the DVD, unless there's something particular that you want to point out in it. I haven't reviewed all four of them. I've reviewed the first one, which has all the critical stuff. It's actually at the end of the second one. Okay, whatever the one it is. I've seen that. I don't think it's necessary either to queue it up. I just brought it in the case of that event. I would like to hit on the standard, though, which the Sixth Circuit out of Keith v. City of Detroit is what I'm relying on, which is that the alleged false statement must be shown that Deputy Dalton made them intentionally, knowingly, or with reckless disregard for the truth. I think what the district court did here is took that reckless disregard for the truth and misinterpreted it. Actually, if you go back to Keith, which is actually a footnote in the dissent, but it doesn't go against the majority, the dissent correctly lists the standard and also then correctly lists what reckless disregard in this particular instance means. It means that the officer would have had to have obvious reasons why he thought what he was writing was incorrect, and none of that was shown. So it's an intent standard. Would he have had to have obvious reasons to know that it was incorrect? Or could just an extremely sloppy investigation have met that standard? I think that's what the district court did. They took reckless disregard and said, okay, it's sloppy, it's negligence, and it's really sloppy. So that's reckless disregard. But if you look at what this standard requires, it requires more than just sloppy or negligence. It requires intent. It requires that this officer knew that what he was writing was false or that he had obvious reasons to know that what he was writing was false. And you won't find anywhere in this record where this officer knew that what he was writing was false or had any reason to think that. Let's take a hypothetical where in this investigation he believes that this Ms. Sussman or whatever is the person who took the purse. And she says, if there's information on the tape that says I was rummaging through the purse, I was rummaging through my own purse, and here it is. You see it looks just like that one. And if that statement is not really considered or investigated at all, is that just sloppy or can that rise to intent? Before that statement is made, I believe that this officer has probable cause. But if you look at his reports, and the part you're talking about, the wallet similarity issue, comes in his supplement. Both his original report and his supplement are turned into the warrant officer, who then looks at them before they even go to the prosecutor's office with the warrant request. So all of that information is there ahead of time. That is not subsequent information that he forgot to give the warrant officer or the prosecutor. And the district court recognized that on reconsideration? No, she didn't. She said that in her original order, and then I sent the motion for reconsideration asking her to see that. And then I think she sort of glossed past it and said, it's just sloppy, it's reckless. She went back to that issue. But what I'm getting at here is, if you look at his report, he presents both sides. He doesn't say that she's right, she's wrong, the victim's right, the victim's wrong. And he says the victim identified her wallet when she looked at that DVD, and he puts that in there. It doesn't mean he believed her, but he does put that in there. He then goes to Ms. Sussman's apartment and interviews her. She says she didn't do it. He puts that in his report. It doesn't mean he believed her, but that goes in there. So there's no point in time where any of that shows that he believed what he was writing was false. You said that he has to know what he said was false or intend to do it false. That's not the standard. The standard is reckless disregard, is it not? Which doesn't necessarily include knowledge. Well, reckless disregard in this particular instance is the officer entertained serious doubts as to the truth of his statement or had obvious reasons to doubt his statement. And where that's coming from is it's actually— But not necessarily whether he did doubt it, but he had reasons. He should have had— Obvious reasons to doubt it. He should have had reasons. Right. So that's more of an objective, that he should have doubted his reasons. And there's nothing in the record— Rather than knowledge. Knowledge is usually subjective, that I know this. Correct. As opposed to I should have known it. Right. He didn't see it. He didn't see it. He apologized that he didn't see it. He says in his depositions he wished he would have seen it. He's even the one that finds out himself that he didn't see it. Okay. The tape, the disc that shows the real thief is on the first disc, is that right? Or is it the same disc? She is prior in time. That's true. Let me tell you. I can tell you that exactly. Okay. That's on tape number one at 1 hour 26 minutes 42 seconds. Okay. So this is on tape number two? Correct. At the end of tape number two. That's at the end of tape number two, 1 hour 57 minutes is where you actually see. And this is one of those security systems where there's three cameras in the laundromat and it's panning from one camera to another, a few seconds at each view. And there's seconds that are lost. So you see her in the background and then all of a sudden you see Ms. Sussman up by the very place that the victim has said this is where she left her wallet. And you see Ms. Sussman go through that. The image that shows the victim leaving the wallet on top of the washer is also on tape one. Yes, sir. Which is the tape that shows the real thief taking the billfold from the washer. Tape two is the one that shows the plaintiff, Sussman, going through her billfold that looks very much like the billfold that was put on the washer. She's doing this in front of the washer. And then she walks out the door with it, which is kind of like counting the money. But I guess my question is to see what the billfold actually looks like, you'd have to go to tape one, don't you? Because tape one shows her putting the billfold up there. And then if you look at tape one, then you would see the real thief taking it from the top. But Mr. Dalton, your client, didn't look at tape one. He just looked at tape two. And that's a hindsight analysis. He should have looked at tape one. But we're sitting here saying that, and he knows this. He said, I should have done that. All right. So you're positioning he's negligent for not doing it, but it's not intentional, it's not reckless. There would be no reason why I'd try to say he's anything less than negligent for not looking at it. I think he'd be the first to admit that, too. But when he's writing his report, and if you go to Beck v. Ohio, it's what the officer knew at that moment in time. And when he's writing his report, this is what he believes. This is what he believes he has seen on the video. He later proves himself wrong. In his report, too, he doesn't set out that he has not, in fact, reviewed tape number one. He doesn't set that out, does he? It came out in the deposition. Here's what he does. No, no, but I mean in his report, though. Boy, I would have to go back and read it to be able to accurately say that. Because this whole thing of reckless disregard is standard, it's critical. And, you know, these things have real consequences. Certainly. Somebody made a decision to go and arrest this woman, and it's unfortunate that it happened. But, you know, you say negligence. She says reckless disregard. She says that that failure to look at tape number one to establish this was so reckless that it ought to be actionable. I agree with what you're saying. I'm saying that's not the standard. In this particular instance, reckless disregard is not the standard? I'm saying reckless disregard is the standard, but it's been defined digitally than what you're saying. So that reckless disregard is not the standard for this one? Correct. Okay. And I want to bring home a point that I think will say that there's another case here out of the Sixth Circuit, Army v. Collins, that talks about the quote is, so even if a jury could find the statement false, it could not conclude it was intentional. As the district court recognized, such inconsistencies are incident to any ongoing criminal investigation being conducted by humans. So these constitutional standards allow for human error, which is why we have qualified immunity, and it's brought up again in Malley v. Briggs. What is this statement that we're talking about? It's just one sentence, right? Which one, sir? The one that's allegedly false, or reckless, with reckless disregard. You know, it is one sentence. It's material. What does the sentence say? It says, I would pull two from his first report. Almos, which is the victim, called the number, and Caitlin Gall, which is the manager, responded. Gall and Almos reviewed the videotape, and when they observed the suspect picking up the wallet, looked through it, placed the wallet in her coat pocket, leave the business, returned to the business, and placed the wallet right back where she took it. Well, that's recounting what someone else said, so that can't be false. All right. That's number one. Number two, on page two of his report, I reviewed the videotape from the point the suspect picked up the wallet, looked through it, placed it in her coat, and exited the business. I was able to clearly see a description of the suspect and the type of coat she was wearing. That's it, then, right? That's it. Two sentences. It's hard for me to see how those are reckless. Because if you look at that point, not the whole tape, if you look at that point, it reflects that. I agree, and I think the reason why I agree mostly is that he's not weighing the evidence. He's not saying it's one or the other. He's just saying, I looked at part of it, and this is what I saw on part of it. And this is where I saw it on the tape. So you don't have to get into esoteric definitions of what's reckless and what's not. That doesn't look very reckless if that's what's on the tape. And he describes it. Yeah, but he says, I observed her pick up the wallet. And in order to have seen her pick up the wallet left on that thing, he would have had to look at tape number one, which he didn't do. But he doesn't say that, though. He just says, I looked at this particular portion. But I thought you just read, I'm not talking about interpreting what he said. What he just read to me was he said, I observed her, the tape, from the point she picked up the wallet. Right. Yeah. Right. He's trying to say where he looked on the tape. Yeah, but the tape doesn't show her picking up the wallet. No, the tape does not. That's the problem. Let me be clear about that because it's a valid point. The tape does not show it. That part is wrong. I mean, he assumes. That's true. I guess that's what everybody does here. You assume things to be true that aren't. And we all operate on assumptions like that once in a while. And it is human error. He walks into the situation on a call for service on a larceny at a laundromat. He talks to the manager and the victim. And the victim appears to identify that as her billfold. Absolutely. And it's not, but it's the same size and the same shape. And the victim thinks it's her billfold. And he sees what has been presented to him in this order, and he buys it. And that's where it starts to go downhill. Okay, why are there four DVDs here as opposed to one or two or 25? I mean, you've got three cameras going on 24 hours a day. Why are there just four? There's three cameras, and the way the system actually records is to jump from one camera to another. So it ends up being. I can see that. Why do we just have four DVDs? I don't think they're necessary. No, how do we have four? They were provided by the laundromat to the officer. To cover a particular period in time? Eight hours. Okay, that's why. Does that make sense? Who requested eight hours, the Sheriff's Department? No, I don't know that. I couldn't answer that for you. I mean, because you could request 24 hours, you could request a week. Right. You could request. Although I think we know the victim says she comes in that morning, and then we know that this happens later in the afternoon, so maybe they're trying to bridge a period of time. Okay. I'm guessing. We know the victim was there, and that would be eight hours. It's a lot of tape to look through. Well, their argument is that they should have looked through all DVDs, and I'm thinking, well, when does this stop? I mean, you could have DVDs go on for weeks and weeks. You could, and he's at the end of his shift, and he's trying to fill out his report, and it doesn't help in the way it should. Thank you. Thank you, counsel. Good morning, Your Honor. Good morning. David Blake on behalf of Ms. Sussman. Just to touch on a few of the arguments set forth by Ms. Reach. The district court did not err when it applied this reckless disregard for the truth standard. What we have to look at here, Your Honor, and particularly Judge Griffin, is the time frame that I think that is essential to this case, the time frame that this particular defendant had this tape in his possession for over a nine-month period of time and still failed to review it in its entirety, all the way up to the time when he arrested Ms. Sussman and had her residence following an incident that occurred nine months earlier. Okay, how many DVDs should it be reviewed? There's four here. Should he review those four plus another five, six, seven? No, Your Honor, I think he should have. He's charged with the duty to review the entire day, and that was what was capped on the DVDs that are set forth here. Okay, so these are more than eight hours. They're 24 hours? They're eight hours. They're eight hours apiece? No, they're eight hours total. Okay, a day is 24 hours, isn't it? Or is the laundry room only open eight hours? No, Your Honor, I believe it is 24 hours, but in this particular case there was a time frame based on the laundromat, the person who lost their wallet, and also the owner who corroborated the time frame with Deputy Dalton during his initial investigation. Okay, so he should have reviewed all eight hours. Why? Because what he says in his report is inconsistent with what the witnesses were telling him at the scene, and also what he included and what he saw on the tape is inconsistent with what he put in his report. Is what he said anything else? You're not relying on anything other than those two sentences that she read? Yes, Your Honor, where he says that, yes, you are relying on those two only, or you're relying on something else he said? Well, I'm relying on the fact that he didn't review the entire tape. I'm asking if he said something that was reckless. That's the standard, right? Yes, Your Honor. Not that he didn't say something else. Or is it that he didn't say something else? Is this an omission? Yes. So you're not really relying primarily on the recklessness of what he actually said. It's his recklessness in not saying something else, and what else he should have said is that I reviewed the whole tape. Is that the idea? Which would have shown another suspect. But that runs into case law, which says that what a policeman doesn't investigate isn't sufficient for liability in that kind of context, aren't you? If you investigate so far and you find enough to go forward and you write it up and give it to the proper prosecuting lawyer or whoever it is that files charges, the fact that you could have and probably should have investigated something else, isn't that not enough under Ehlers and Peete and all those cases? Well, Your Honor, for our purposes, for this particular application as applied by the district court, I think that there should have been more. And if you understand there should have been more, the question is whether you're going to... Based on the inconsistency that he included, his false statements, it shows... Now you get to the false statement. If it all depends on the false statement, the false statement, that's my question, is just those two sentences, right? Yeah. Well, but they don't... You have to read them from a particular perspective to see them as being false. He identifies when he reviewed the videotape from the point that the suspect picked up the wallet. He doesn't actually see, because of the way it flips back and forth, the picking up of the wallet, but before that point it hasn't been picked up, and after it has been picked up, so it just doesn't seem to be reckless to me. This is the question I'm wanting you to answer, to say this is where I reviewed it, from the point they picked up the wallet, to make the logical inference that when the camera was somewhere else, that's the point when the wallet was picked up. And that's now the crux of your whole case, isn't it? Yes, but I think that he had an obligation to review the tape. But if he said from the point where apparently the wallet was picked up, then your case goes away? No, Your Honor. But that would not be a false statement, then. So, and once it's not a false statement, and you have no false statements, doesn't your case fall apart? Unless you say that you can recover for negligence in not finding additional evidence that would have exonerated him. Right, but I think... So there's two different kinds of arguments. That's why I'm trying to identify which one you're making. Well, Your Honor... Maybe both, I don't know. I'm saying that his false statement in the record is inconsistent with what he sees on the tape. And that's what I'm saying. But if he had said apparently picked up the wallet, it wouldn't be false anymore. That's correct. But that's not what he said. I understand. But then that's basically your whole case there, right? It's that it was reckless to leave out the word apparently, basically. Yes, and to view the entire video. Well, but when you say that, that would not be enough if it weren't for this other fact. Do you agree or not? I agree, Your Honor. And I think that, again, this is an individual who has this tape in his possession. The statements that are made at the scene are not consistent with what he includes in his report. And then he doesn't even have the due diligence or undertake the effort to review the tape in its entirety, which would have shown the other suspect taking the wallet. Okay, the district judge, in her opinion, appears to deny a motion for qualified immunity on the basis that she says that whether the action here was negligent, intentional, or reckless disregard is a jury question. If the facts are undisputed, is it a jury question of whether this is negligent, intentional, or reckless disregard when the facts are not in dispute? Well, I think it is. I agree with the district court, Your Honor, as far as her analysis and making that determination. So you say it is a jury question? Yes. I thought you had to have factual disputes. Well, there is a factual dispute, Your Honor, with respect to what Deputy Dalton included in his report. No, there's not, but we can read the report. With respect to what was on the tape. I mean, we have all the facts. She says, well, qualified immunity is a jury question here, and I just want to know what fact would they decide? Because I don't see it factually. They would decide, Your Honor, whether qualified immunity would apply to Deputy Dalton based on the fact that he did not review the tape in its entirety, a tape which exonerates my client. Okay, if that actually were the standard, wouldn't that be an issue of law rather than an issue for the prior fact? No, I believe it is an issue for the prior fact. What his duty is? I mean, duties are normally a legal question. What obligations he had. Okay, obligations to me point with duties, and duties are a question of law, aren't they? I don't believe as applies to our particular circumstances, Your Honor. Why not? Why would duty here be an issue of fact that would depend on whatever jury you have as opposed to whatever the law is as to an officer's duty? Well, as Judge Roberts included in her opinion, she found that the probable cause determination, the whole basis for this arrest and taking my client into custody was based on this report, which contained false statements, and a reasonable juror could conclude that the report was constitutionally deficient, and that's the question of law I think the report was citing in her opinion. Okay. Thank you. Oh, thank you, counsel. Do you have a rebuttal? In answer to your question, there is a case, Kuzlick, out of K-U-S-L-I-C-K, out of the circuit, that talks about qualified immunity standard for these false arrest claims, and it goes in two steps. One, the plaintiff must make a substantial showing that the officer made a deliberate falsehood or showed reckless disregard. It's the same as the Pete standard. And then if you can get past that hurdle, which I'm asserting we can't in this case, then you get to step two, which is that you have to show that the false statement was material. I think there's no doubt that the false statement was material. I think the problem with this case is you can't get past the step one. And then also as to the probable cause that was brought up with regard to qualified immunity, the Valkylian case out of the circuit states that with this type of issue, probable cause is one for the jury. So in both instances, for qualified immunity, it does not go to the jury. It's decided by the court. And then in response to Mr. Blake's statement that he should have, and also the district court's statement that the whole eight hours should have been looked at, and he had these tapes for nine months and never bothered to look at them, that's because he had no doubts. He thought he had it back then in April of 2010. He thought he was done. If he'd had doubts, he would have gone back over and looked at them. We assume. I'm sorry? You assume. There's nothing in the record which says that. That's correct. Thank you. Thank you, counsel. Further questions? The case will be submitted. Other cases will be on the briefs. You can go ahead and adjourn the court. Thank you, counsel. There are no reports and adjourned.